1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MARTIN FELIPE MIRAMONTES,          )   Civil No. 12cv595 LAB (NLS)
                                        )
12                        Plaintiff,    )   **REPORT AND RECOMMENDATION**
     v.                                 )   **FOR ORDER DENYING PETITION**
13                                      )   **FOR WRIT OF HABEAS CORPUS**
     DAVID LONG, Warden,                )
14                                      )   [Doc. No. 1]
                          Defendants.   )
15   _____)

16          Martin Felipe Miramontes, a California prisoner proceeding pro se, filed a petition for writ of

17   habeas corpus under 28 U.S.C. § 2254 (Petition).  Miramontes is serving an indeterminate sentence of

18   146 years to life for sexually abusing children.  He contests his confinement, alleging that his due

19   process rights and right to a fair trial were violated when the trial court admitted evidence of similar and

20   prior uncharged conduct.  Respondent filed an answer and an amended memorandum of points and

21   authorities, as the court ordered.  Miramontes filed a traverse on January 15, 2013 and then again on

22   February 7, 2013.

23          This court has reviewed the Petition, amended answer, both traverses and the complete record in

24   this case.  After a thorough review, the court **RECOMMENDS** that the Petition be **DENIED** and that it

25   be dismissed with prejudice.

26   / / /

27   / / /

28   / / /

                                                   1

<u>**PROCEDURAL HISTORY**</u>

**1.      The Conviction.**

A jury convicted Miramontes of sodomy and oral copulation/sexual penetration with a child ten years old or younger, committing lewd sex acts on a child, using harmful matter to seduce a child, and possession of child pornography.  The jury found there were multiple victims and that Miramontes engaged in substantial sexual conduct with a child under age 14.  The court sentenced Miramontes to a prison term of 146 years to life, with 25 years to life imposed for the sodomy count, and 15 years to life terms for eight of the other counts, and a one-year term for one conviction of a lewd act upon a child.  Concurrent terms were imposed for five other counts.  *People v. Miramontes*, 189 Cal.App.4th 1085, 1089 (2010); Lodgment 2 at 948.

**2.      The Appeal.**

Miramontes filed a direct appeal alleging these claims: (1) the admission of the prior sexual offense evidence that occurred in Tijuana violated the California Evidence Code sections 352 and 1108 and his constitutional rights to due process and a fair trial; (2) the improper admission of prior "bad acts" evidence violated federal rights to due process and a fair trial; and (3) the trial court erroneously instructed the jury in violation of Miramontes's due process rights.  Lodgment 3.

In a published decision the court of appeal affirmed the conviction on November 4, 2010.  *See Miramontes*, 189 Cal.App.4th 1085; Lodgment 6.

Miramontes filed a petition for review, alleging the first and third claims that he alleged in his direct appeal.  Lodgment 7.  The California Supreme Court summarily denied the petition on February 16, 2011.  Lodgment 8.

**3.      Habeas Petition.**

Miramontes came directly to federal court to file this Petition on March 8, 2012.  In the form Petition, Miramontes refers to pages 3 to 6 of the attachment as stating the bases for his claims.  On page 3 of the attachment, Miramontes asserts these grounds for relief:

> 5.1 The admission of the prior sexual offense evidence that occurred in
> Tijuana violated Evidence Code Section 352 and the plain language of
> Evidence Code Section 1108, as well Petitioner's Constitutional rights to
> due process and a fair trial.

5.2 Petitioner's judgment of conviction must be reversed in its entirety because the trial court erroneously instructed the jurors pursuant to CALCRIM No. 1191 in violation of Petitioner's constitutional right to due process.

Dkt. No. 1, ECF p.22.  These claims were presented to the California Supreme Court.

## FACTUAL BACKGROUND[1]

### A. Background

Miramontes does not challenge the sufficiency of the evidence to support his various convictions, and we may therefore set out the facts regarding those offenses in a summary fashion, for the purpose of evaluating his evidentiary error claims about similar uncharged conduct. In doing so, we refer to the young victims of the 2007 sexual misconduct as L. (Eduardo L.), D. (Eduardo D.) and M. (Javier M.). Likewise, as to the 2003 uncharged molestation incidents in Mexico, we refer to the young victims as B. (B.B.) and A. (Alex L.).

### B. The Prosecution Case: Three Victims

Basically, the evidence showed that in 2007, Defendant was in his 40's, and was living in San Diego in an apartment complex near the residences of the three young male victims, L. (age 7), D. (age 12), and M. (age 11). In 2003, Miramontes was living in Mexico in a neighborhood near B. (then age 7) and her male cousin A. (also age 7). He "befriended" all of these youngsters and inappropriately touched and communicated with them in various ways, as will next be described.

#### 1. Counts 1–9, L.

In the fall of 2007, Miramontes was living in San Diego with his parents and a disabled sister. L. was seven years old and lived in the same apartment complex. L. testified at trial that Miramontes often invited him to his bedroom and showed him pornographic movies with boys and adults, told him that was good behavior, and then had him take off his clothes and touched him all over his body. Sometimes D. or M. was also there and participated in such conduct. Miramontes kissed L.'s neck, penis and anus,

---

[1]This court quotes verbatim the factual background from the California Court of Appeal's opinion.  Lodgment 3.  *See* 28 U.S.C.§ 2254(e)(1) ("a determination of a factual issue made by a state court shall be presumed to be correct"); *Sumner v. Mata*, 449 U.S. 539, 545-547 (1981) (deference is owed to factual findings of state trial and appellate courts); *Garvin v. Farmon*, 258 F.3d 951, 952 (9th Cir. 2001) (paraphrasing facts from the state court opinion).   Petitioner may rebut the presumption only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 545 F.3d 1181, 1183 n.1 (9th Cir. 2008).

12cv595 LAB (NLS)

1  and asked L. to suck or kiss his penis. Miramontes kept a plastic penis in the closet that he asked L. to

2  kiss. Miramontes put the plastic penis into his own anus, and also into L.'s anus and M.'s anus.

3       Miramontes gave L. a dollar and promised him a CD and a Playstation if L. would suck his

4  penis, but he gave L. only the CD. Miramontes showed L. how he would shower his own disabled sister

5  and put his finger into her anus. The last day they were together, Miramontes placed his finger and penis

6  into L.'s anus. That night, L.'s mother was giving him a bath and noticed a bruise on his thigh and

7  bleeding

8  from his anus. She discovered he was in pain and could not walk, and reported the incidents to police

9  the next day, November 5, 2007.

10      At first, L. told police and the interviewing social worker from the Health and Human Services

11 Agency (the Agency) that he knew what bad touching was and no one had done anything like that to

12 him. A forensic medical examination November 9, 2007 disclosed that L. had a deep tear in his anus that

13 had healed over time, consistent with an injury, rather than any natural causes. L.'s mother reported L.

14 had recently been having heart palpitations, bedwetting and severe bowel control problems.

15              **2. Counts 10–12, D.**

16      D. was 12 years old in the fall of 2007, and lived in the same apartment complex as did

17 Miramontes and L. When they were together, Miramontes talked to L. and D. about sex and how it was

18 good for boys to have sex together, and he showed them pornographic movies. Miramontes squeezed the

19 penis of D., and another time, put his hands down his own pants and then wiped a wet, sticky substance

20 on D.'s cheek. Miramontes told the two boys that he would kill their mothers if they told anyone.  D. and

21 his mother also went to the police station to report Miramontes's activities.

22          **3. Counts 13–14, M., and 16, all three youths**

23      M. was 11 years old in 2007 and lived near the apartments where Miramontes lived. When M.

24 was playing with L. and D., Miramontes sometimes approached them and showed them child

25 pornography involving boys. Miramontes offered the boys money to engage in sex acts with each other

26 or with him, while he watched, and he told M. that he liked to rape little kids.

27      One time, M. saw Miramontes touching another boy's penis and buttocks, and then Miramontes

28 grabbed M.'s penis and touched his stomach area. Miramontes told the boys that if they told anyone

1    about these activities, Miramontes would kill their mothers. Sometime later, M. learned that L. and his

2    mother had told the police about Miramontes's activities.

3        Investigators obtained a search warrant for Miramontes's room and found some of the items that

4    had been described by the three victims, including toys, the plastic penis, thong underwear, computer

5    photographs and videos of boys involved in sexual acts, a camera and cell phone, and photographic

6    prints of boys involved in sexual acts. Investigators reviewed Miramontes's computer chat logs and

7    found sexual materials and sexual references to Miramontes's sister.

8        L., D. and M. each testified at trial, explaining they knew the difference between truth and a lie,

9    and describing the above incidents that involved them.

10   **C. In Limine Proceedings on Admissibility of Prior Uncharged Sexual Misconduct**
     **Incidents**

11

12       Before the jury was selected, both parties brought motions in limine regarding the intent of the

13   prosecutor to introduce testimony about prior uncharged sexual offenses against children, specifically

14   two children, B. and A., who previously lived near Miramontes in Mexico. (Evid. Code, §§ 1101, 1108.)

15   Miramontes opposed the prosecutor's motion to introduce such testimony, arguing it was too prejudicial,

16   inflammatory, or confusing, and would be cumulative and unnecessary, since the current three victims

17   were going to testify. Also, Miramontes claimed in his own motion that federal due process violations

18   were inherent in the use of criminal propensity evidence.

19       At the hearing on the motions, the court agreed with the prosecutor that under Evidence Code

20   section 1108, the prior acts could legitimately be used for propensity evidence, as guided by the

21   instructions. The court explained its ruling as follows: Under Evidence Code sections 1101, subdivision

22   (b), the evidence would be appropriate for the jury to consider as to intent or common plan. Evidence

23   Code section 1108 further provided for the admission of propensity evidence, if it were not unduly

24   inflammatory or remote in time. The court found that adding those two witnesses would not create an

25   unduly lengthy proceeding, and under California Supreme Court cases, Evidence Code section 1108 did

26   not violate federal due process guarantees. The defense objections under Evidence Code section 352 (on

27   both state and federal due process grounds) were overruled.

28       At the time of trial B. was 13 years old. In her testimony, she explained that when she was four

1    to six years of age, she regularly went to the Tijuana house of Miramontes's mother, her babysitter,

2    when Miramontes also lived there. Miramontes alone babysat her for about a week at one point.

3    Beginning when she was about four years old, Miramontes sometimes took her into his bedroom and

4    asked her to suck on his penis, and he would kiss and touch her breasts, buttocks, and vagina. At times,

5    he would also bring her cousin A. into the bedroom, make them both undress, and have B. perform

6    sexual acts on A. and on Miramontes, sometimes videotaping them.

7        Miramontes sometimes masturbated in front of B., and he sometimes required her to perform sex

8    acts on one of Miramontes's visiting teenage male acquaintances, who had also appeared in

9    Miramontes's pornographic movies shown to her. Miramontes told her that if she told anyone about

10   these activities, something bad would happen to her mother. These acts stopped in 2003, when she was

11   six or seven years old, when her cousin, A., told B.'s mother about what was happening at Miramontes's

12   house, and B. then disclosed those facts to her. Tijuana police were called and investigated, and medical

13   examinations were conducted of the children, but apparently no charges were filed. About that time in

14   2003, Miramontes and family moved to San Diego.

15       After B.'s testimony, the court gave a limiting instruction under CALCRIM No. 1191 regarding

16   the uncharged crime of Miramontes committing a lewd act upon a child. The court explained to the jury

17   at that time that the evidence of uncharged offenses was admitted for a limited purpose, to decide

18   whether or not Miramontes was the person who committed the offenses in this case, with the required

19   intent or plan. The court repeated the same instruction when A. began his testimony, and again after the

20   parties rested. FN2

21           FN2. CALCRIM No. 1191 provides: "The People presented evidence that
             the defendant committed the crimes of a lewd act upon a child that were

22           not charged in this case. These crimes are defined for you these
             instructions. [¶] You may consider this evidence only if the People have

23           proved by a preponderance of the evidence that the defendant, in fact,
             committed the uncharged offenses. . . . [¶] . . . [¶] If you decide that the

24           defendant committed the uncharged offenses, you may, but are not
             required, to conclude from that evidence that the defendant was disposed

25           or inclined to commit sexual offenses, and based on that decision, also
             conclude that the defendant was likely to commit sodomy [and oral

26           copulation and sexual penetration] of a child under 10, and lewd acts upon
             a child as charged here. If you conclude that the defendant committed the

27           uncharged offenses, that conclusion is only one factor to consider along
             with all the other evidence. It is not sufficient by itself to prove that the

28           defendant is guilty of [the same above offenses and] lewd acts upon a
             child. The People must still prove each element of the charge and

                                           6

1           allegation beyond a reasonable doubt." Additionally, the court gave
CALCRIM No. 375, regarding evidence of uncharged offenses to prove
2           identity, intent, common plan, etc., which included the following
language: "Do not consider this evidence for any other purpose."
3

4         A. testified that when he and B. were both around seven, he would sometimes go into

5 Miramontes's bedroom when B. was also there. Miramontes touched both B. and A. all over their bodies

6 while they were unclothed, and he videotaped his and their sexual acts. Miramontes kissed A.'s penis

7 and placed his own penis into A.'s rectum until white stuff came out. In return, Miramontes gave A. 20

8 pesos.

9         Dr. Davis, who had examined L., also examined records of forensic medical examinations of B.

10 and A., conducted after their 2003 reporting of those incidents. B.'s examination was normal, and A.'s

11 examination showed mainly normal results, but also some evidence of abrasions on his right leg and a

12 laceration near his anus, which was characterized as "paragenital violence."

13      **D. The Defense Case**

14         Miramontes did not testify in his defense at trial. He called as witnesses the police officer who

15 had initially interviewed L. At that time, L. denied to police that any bad touching had occurred.

16 Similarly, the Agency's social worker was originally told by L. that there had not been any bad touching

17 in his life.

18         Likewise, when M. was initially interviewed, he denied that Miramontes had ever touched him.

19 Miramontes's counsel argued that one or more of the mothers of the boys must have made up these

20 stories, or that L.'s anal injuries must have been caused by passing hard stools, which explanation had

21 not been ruled out by the medical examination.

22         Miramontes called several family members as witnesses (his mother and two aunts), who each

23 testified about never seeing him act inappropriately around children. His mother testified that she, not

24 Miramontes, was the care provider for his disabled sister (and earlier for B.), and that Miramontes was

25 always too busy at work to have engaged in the activities of which he was accused. She said she did not

26 allow A., who she said was dirty and a "street kid," into her house in Mexico.

27         According to the testimony of Miramontes's father, the family moved to San Diego in 2003

28 because of his own health. In 2007, he was at the apartment building one day and saw that a young boy

(either L. or D.) was orally copulating another boy, so he reported this to their mothers.

Miramontes called two character witnesses, a work acquaintance and a social acquaintance, who also testified they had never seen him act inappropriately around children.

**E. Verdict; Judgment**

During closing argument, the prosecutor told the jury that the evidence about the uncharged previous sexual offenses with B. and A. could be used to show Miramontes's propensity and specific intent to commit the current alleged crimes, including lewd conduct upon a child under the age of 10. (CALCRIM No. 1191.) In the same way, she also referred to the previous use of harmful material (pornography) with A. and B., as showing a propensity to commit such acts on the current victims.

In defense counsel's closing, she pointed out that even if Miramontes had downloaded and viewed child pornography on his computer, that did not mean that he had actually engaged in similar acts against the children who testified in court. She then argued that their stories had evolved over time, and pointed out they delayed in their initial reporting of the offenses.

With respect to the testimony of the two children from Mexico, defense counsel suggested that their stories were implausible, such as where B. said that Miramontes had babysat her for a week in 2003 while his parents were on vacation, and some sex acts happened at that time. Also, the apartment in Tijuana had a layout that would not have allowed much secrecy in comings and goings. The physical examinations of the Mexican children had not shown clear signs of physical or sexual abuse. In rebuttal, the prosecutor mentioned the testimony of the two Mexican children, and argued their stories were not merely coincidental. The case was submitted.

In jury instructions, the court read, among others, CALCRIM No. 1191, regarding the evidence of Miramontes allegedly engaging in sexual conduct with the two Mexican children, although that was not charged in this case.

During deliberations, the jury sent out a number of questions to the judge, including one about the further allegations for count 1 and which multiple victims were being referenced, i.e., whether that paragraph only referred to the current victims, "or does this include A./B. (uncharged?) Or anyone we don't know about?" The court answered that the multiple victim language referred only to the charged victims, L., D., and M.

As summarized above, the jury returned verdicts finding Miramontes guilty, specifically as to L.: One count of sodomy; four counts of oral copulation/sexual penetration; two counts of lewd acts (hand/penis contacts); and two counts of using harmful material to seduce a minor.

As to D. in particular, the jury verdicts found Miramontes guilty of two counts of lewd acts on a child (hand/crotch contact; finger/cheek contact), and one count of using harmful material to seduce a minor.

As to M., the jury verdict found Miramontes guilty of one count of attempted lewd acts (display of penis) and one count of using harmful material to seduce a minor. FN3

> FN3. The jury hung on one count of lewd act upon a child (M., count 15), and it was subsequently dismissed at the request of the prosecution. Also, certain further allegations regarding the attempted lewd acts on M. (count 13), were dismissed after the verdict, although the others remained in effect.

Additionally, the jury convicted Miramontes of possession of child pornography (§ 311.11, subd. (a)), and found true the further allegations of multiple victims (§ 667.61, subd. (b); § 1203.066, subd. (a)(7)); substantial sexual conduct with a child (§ 1203.066, subd. (a)(8)); and use of harmful sexual matter (§ 1203.066, subd. (a)(9)). Miramontes timely appealed.

Lodgment 6; *Miramontes*, 189 Cal.App.4th at 1090-1096.

## LEGAL STANDARD

### A.    AEDPA Governs this Petition.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Petition. *See Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997). Under AEDPA, a federal court will not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the decision was (1) contrary to or involved an unreasonable application of clearly established federal law; or (2) based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002). "Clearly established federal law," for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A federal habeas petition must allege a deprivation of one or more federal rights; the federal court will not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502

1    U.S. 62, 67-68 (1991).

2        **B.    Decisions that Contradict or Unreasonably Apply Federal Law.**

3        A federal habeas court may grant relief where the state court (1) decides a case "contrary to"

4    federal law by applying a rule different from the governing law set forth in Supreme Court cases; or (2)

5    decides a case differently than the Supreme Court on a set of indistinguishable facts. *Bell v. Cone*, 535

6    U.S. 685, 694 (2002).  A federal court may also grant habeas relief where a state court decision is an

7    "unreasonable application" of federal law, such as where the state court correctly identifies the

8    governing legal principle from Supreme Court decisions but unreasonably applies those decisions to the

9    facts at issue. *Id.*

10       The state court decision must be more than incorrect or erroneous; to warrant habeas relief the

11   state court's application of "clearly established federal law" must be "objectively unreasonable."

12   *Lockyer*, 538 U.S. at 75.  "Objectively unreasonable" differs from "clear error" in that a federal court

13   cannot grant habeas relief only because it believes the state court erroneously or incorrectly applied

14   "clearly established federal law;" the application must be objectively unreasonable.  *Id.* at 75-76

15   (internal citation omitted).  That standard under AEDPA is difficult to meet and "demands that state-

16   court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388,

17   1398 (2011) (internal quotations omitted).  A state court's determination that lacks merit still "precludes

18   habeas relief so long as fairminded jurists could disagree" on the correctness of the ruling.  *Harrington*

19   *v. Richter*, 562 U.S. __, __, 131 S. Ct. 770, 786 (2011).

20       **C.    Decisions Based on an Unreasonable Determination of Facts.**

21       Section 2254(e)(1) provides: "[a] determination of a factual issue made by a State court shall be

22   presumed to be correct." 28 U.S.C. § 2254(e)(1).  The petitioner has "the burden of rebutting the

23   presumption of correctness by clear and convincing evidence." *Id.*

24       **D.    Review of State Court Decision.**

25       If the State Supreme Court silently denies a Petitioner's appeal with a summary dismissal, the

26   reviewing federal habeas court must look through to the last reasoned state court opinion in making a

27   decision.  *See Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  Here, the decision from the

28   California Court of Appeal is the last reasoned state court decision addressing the two claims.

1  Lodgment 6.

2  **DISCUSSION**

3  **1.**    **Claim 1: Evidence Code Violations and Rights to Due Process and Fair Trial.**

4       Petitioner claims that the admission of the prior sexual offense evidence that occurred in Tijuana

5  violated Evidence Code Section 352 and the plain language of Evidence Code Section 1108, in violation

6  of his constitutional rights to due process and a fair trial. He first breaks down the claim by arguing that

7  the Tijuana offenses do not qualify as prior bad acts under California law. Then he addresses, in

8  general, the due process and fair trial claim. Respondent argues that the "qualification" of the Tijuana

9  offenses is procedurally barred and alternatively, fails on the merits. Respondent also argues that there

10  is no merit to Petitioner's due process and fair trial claim.

11                **A.**    **Procedural Default for Part of the Claim.**

12       As part of his claim that the Tijuana sexual offenses were improperly admitted, Petitioner argues

13  those acts do not qualify as prior acts under California law because the alleged acts occurred in a foreign

14  jurisdiction. Respondent contends that this aspect of the claim is procedurally defaulted because the

15  appellate court denied it for failure to raise it to the trial court. Respondent also argues, in the

16  alternative, that even if Petitioner overcomes the procedural default, that aspect of the claim lacks merit.

17       Petitioner did not raise the foreign jurisdiction claim to the trial court, he only raised it on direct

18  appeal. The appellate court denied the claim on procedural grounds because "it was not raised before

19  the trial court, and should therefore be considered to be forfeited." *Miramontes*, 189 Cal.App.4th at

20  1098. Notwithstanding that ruling, the court went on to deny the claim on the merits:

21         Next, even if this argument is considered, it makes no sense, because the intended scope
   of Evidence Code section 1108 is broad enough to encompass admissibility of the

22         testimony of B. and A., which clearly describes conduct that is prohibited by California
   law, even though it did not take place in California. Nowhere in Evidence Code section

23         1108 is it required that the referenced other sexual offenses have taken place in the
   United States, and instead, the definitions in its subdivision (d) include descriptions of

24         the substance of unlawful conduct involved in a prior offense, wherever it may have
   occurred. The principal consideration in this inquiry is whether the comparable prior,

25         essentially similar, conduct occurred, not where it occurred, for purposes of determining
   if California consequences will ensue, such as its admissibility under Evidence Code

26         section 1108.

27  *Miramontes*, 189 Cal.App.4th at 1099.

28       The court further concluded that in any event, these uncharged prior acts were properly admitted

11

1  so long as they satisfied California Evidence Code § 352:

2    If Evidence Code section 352 requirements are satisfied, evidence of an uncharged sexual
     offense or incident of misconduct that substantially consisted of the conduct defined in
3    Evidence Code section 1108, subdivision (d)(1)(A) through (F), but that was committed
     elsewhere, may properly be considered by the jury under Evidence Code section 1108,
4    subdivision (a).

5  *Miramontes*, 189 Cal.App.4th at 1101.

6      A liberal reading of the Petition suggests that Petitioner argues this aspect of his due process and

7  fair trial claim should not be procedurally barred.   "Procedural bar issues are not infrequently more

8  complex than the merits issues presented by the appeal, so it may well make sense in some instances to

9  proceed to the merits if the result will be the same." *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir.

10 2002) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("It is wasteful of both our resources and

11 that of the litigants [to address procedural default] if the ultimate dismissal of the petition is a foregone

12 conclusion.")

13     As discussed below, this court finds that federal habeas relief is not available to Petitioner

14 because the state court's determination that the Tijuana offenses constituted prior acts and that the prior

15 acts evidence was properly admitted was objectively reasonable within the meaning of § 2254(d).  Thus,

16 addressing the issue of procedural default for only one aspect of the claim will not change the outcome

17 of these proceedings.  Further, the appellate court found that the sub issue of where the prior acts

18 occurred is irrelevant so long as Evidence Code § 352 is satisfied, an issue that this court addresses

19 below.  Judicial economy dictates reaching the merits of Petitioner's due process and fair trial claim

20 without a determination regarding the procedural bar for one aspect of this claim.

21     Accordingly, the court **RECOMMENDS** reaching the merits of claim one without ruling on the

22 issue that the claim is procedurally defaulted.

23     **B.    Merits of Due Process and Fair Trial Claim.**

24     Respondent argues that the claim presents an issue of state law only, and therefore is not

25 cognizable.  Respondent alternatively argues that the appellate court correctly found the evidence was

26 properly admitted, so that no federal constitutional violation could have occurred.

27     Generally, the correctness of a state evidentiary ruling presents only an issue of state law and is

28 not cognizable on federal habeas corpus review.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);

1   *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  A state court's evidentiary ruling is not

2   subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of

3   such magnitude that the result is a violation of due process.  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th

4   Cir. 1995).  Even if a federal constitutional error can be shown, a federal court would still have to

5   determine whether the error was harmless.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (habeas

6   relief is not available unless the error resulted in a substantial and injurious effect or influence on the

7   jury's verdict); *Fry v. Pliler*, 551 U.S. 112, 119-122 (2007) (harmless error analysis under *Brecht* is still

8   required even after showing that the state court opinion was contrary to or involved an unreasonable

9   application of clearly established federal law); *Frantz v. Hazey*, 533 F.3d 724, 735-736 (9th Cir. 2008)

10   (en banc) (a finding that a state court decision is objectively unreasonable under § 2254(d) still requires

11   a federal habeas court to determine whether a constitutional violation actually occurred).

12        The interplay between California Evidence Code section 352[2] and section 1108[3] gives a state

13   court discretion to admit evidence of prior acts as propensity evidence:  "[t]rial courts may no longer

14   deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process

15   under § 352."  *People v. Falsetta*, 21 Cal. 4th 903, 916-917 (1999) (finding that "the trial court's

16   discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due

17   process challenge").  In deciding whether to admit prior sexual offense evidence, the trial court should

18   consider such factors as its nature, relevance, remoteness, likelihood of confusing the issues, prejudicial

19   impact, and burden on defendant in defending against the uncharged offense.  *Id.*  The trial court has

20   broad discretion to assess whether concerns of undue prejudice outweigh the evidence's probative value.

21   *People v. Rodrigues*, 8 Cal. 4th 1060, 1124 (1994).

22        Here, the appellate court reasoned the prior acts evidence was properly admitted:

23   / / /

24

25       [2] California Evidence Code § 352 states: "The court in its discretion may exclude evidence if its
26   probative value is substantially outweighed by the probability that its admission will (a) necessitate
     undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues,
27   or of misleading the jury."

28       [3]    California Evidence Code § 1108(a) states: "In a criminal action in which the defendant
     is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or
     offenses is not made inadmissible by § 1101, if the evidence is not inadmissible pursuant to § 352."

In this case, the trial court had a substantial basis to find the evidence from B. and A. was admissible under Evidence Code section 1101, subdivision (b), on the issues of Miramontes's intent and common scheme or plan. The prosecution had a legitimate need to introduce such evidence, because Miramontes was pleading not guilty and was claiming that the victims in the current offenses were not credible and they or their mothers were making up the charges. It was therefore important to bolster the credibility of the current victims by bringing in evidence from Miramontes's prior child acquaintances, who had undergone similar treatment at his hands. In each case, he was much older than the child victims, performed similar acts on them, showed them pornography, had them interact sexually while he watched, offered them money, and/or threatened their families. That evidence supports the common design or plan theory for admissibility under Evidence Code section 1101.

Likewise, under Evidence Code section 1108, Miramontes cannot show an abuse of discretion in admitting this evidence about his prior sexual activity with other children. For one thing, it was not unduly remote or dissimilar (four years before). At that time, both B. and A. were about seven years old, the same age as L. in the current set of charges, while Miramontes was an adult in his late 30's and early 40's. The prior acts of sexual misconduct described in the testimony of B. and A. were similar in nature to those charged, and were described in sufficient detail to make them probative (even allowing for the then young age of the children and the passage of time, presumably affecting their memories). It is not dispositive that no charges were filed in Mexico, nor that the physical exams of B. and A. were inconclusive, since the major features of the prior sexual conduct closely resembled those in the current charges.

Accordingly, the trial court had an adequate basis to conclude that the prior offense evidence was not impermissibly inflammatory in nature; "prejudicial" is not synonymous with "damaging," as suggested in *People v. Bolin, supra*, 18 Cal.4th 297, 320. Nor was the presentation of this evidence, by two witnesses, unduly burdensome in terms of trial time.

With respect to Miramontes's contention that the prior offense testimony must have been inordinately confusing to the jury, the record shows that the trial court took pains to inform the jury of the limited purpose for which the testimony of B. and A. could be considered, by giving it three sets of instructions on that issue. Further, the trial court had an adequate basis, in the weighing process of Evidence Code section 352, to conclude that the prior offense evidence was neither cumulative nor unnecessary, merely because the current three victims were also available to testify. Instead, since Miramontes was challenging the credibility of the current three victims, it was well within the discretion of the trial court to carry out this balancing process in favor of allowing the prior offense testimony for the purpose of showing propensity.

*Miramontes*, 189 Cal.App.4th at 1102-03.  Finding the evidence was properly admitted, the appellate court did not conduct a harmless error analysis.  *Id.* at 1103.

Neither the Supreme Court nor the Ninth Circuit has ruled on whether admission of propensity evidence under section 1108 violates due process.  *Alberni v. McDaniel*, 458 F.3d 860, 863-864 (9th Cir. 2006) (recognizing the U.S. Supreme Court has reserved ruling on whether propensity evidence violates due process); *Smith v. Roe*, 232 F. Supp. 2d 1073, 1085-88 (C.D. Cal. 2002) (because U.S. Supreme Court has not ruled on whether other crimes evidence violates due process the claim cannot be

1   cognizable under AEDPA).  The Ninth Circuit has, however, specifically rejected a due process

2   challenge to Federal Rule of Evidence 414[4].  *See U.S. v. LeMay*, 260 F.3d 1018, 1024, 1027 (9th Cir.

3   2001).  It concluded that Federal Rule of Evidence 403–which is equivalent to California Evidence Code

4   section 352–serves to filter out prior conduct evidence that is so prejudicial as to deprive the defendant

5   of his due process rights.  *Id.* at 1026. The court explained: "With the protections of the Rule 403

6   balancing test still in place, LeMay's due-process challenge to Rule 414 loses much of its force."  *Id.*

7        The analysis of Rules 403 and 414 in *LeMay* is analogous to the California Supreme Court's

8   analysis of sections 352 and 1108 in *Falsetta*, and parallels the trial court's balancing test here:

> Further, the trial court had an adequate basis, in the weighing process of Evidence Code section 352, to conclude that the prior offense evidence was neither cumulative nor unnecessary, merely because the current three victims were also available to testify. Instead, since Miramontes was challenging the credibility of the current three victims, it was well within the discretion of the trial court to carry out this balancing process in favor of allowing the prior offense testimony for the purpose of showing propensity.

13   *Miramontes*, 189 Cal.App.4th at 1103.

14        Finally, the record does not support a finding that the jury was confused by admission of the

15   prior acts.  The appellate court noted:

> With respect to Miramontes's contention that the prior offense testimony must have been inordinately confusing to the jury, the record shows that the trial court took pains to inform the jury of the limited purpose for which the testimony of B. and A. could be considered, by giving it three sets of instructions on that issue.

19   *Id.*  As further discussed below with respect to claim 2, the jury was instructed several times to follow

20   the limiting instructions and treat the prior acts merely as one factor to consider within the context of all

21   the evidence presented against Petitioner.  *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (stating

22   almost invariable assumption that jurors follow their instructions).  The primary evidence in this case

23   consisted of strong eyewitness testimony of the victims who corroborated each other with their

24   consistent accounts.  Petitioner has identified nothing fundamentally unfair about the use of the prior

25   acts evidence also presented by eyewitnesses, which itself was based on conduct consistent with and

26   similar to the charged offenses.

---

28   [4]California Evidence Code § 1108 is similar to Federal Rule of Evidence 414, which permits the introduction of prior conduct evidence in federal child molestation cases.

To the extent Petitioner contends that the state courts erred in ruling that the evidence of his prior bad acts was admissible under California law, such a claim is not cognizable on federal habeas. *Estelle*, 502 U.S. at 67. With respect to Petitioner's claim that introduction of the evidence was a violation of his federal rights to due process and a fair trial because it unfairly permitted the jury to find that he had a propensity to commit crimes similar to the ones with which he was charged, the state court's denial of the claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, the court **RECOMMENDS** that Petitioner's claim that the admission of evidence of his prior acts in Tijuana violates his rights to due process and a fair trial be **DENIED**.

## 2.    Claim 2: Due Process Claim In Light of Alleged Erroneous Jury Instruction.

Petitioner claims, without any specific facts or argument, that his judgment of conviction must be reversed because the trial court erroneously instructed the jurors pursuant to CALCRIM No. 1191[5] in violation of Petitioner's constitutional right to due process. [Dkt. No. 1, ECF p. 22.] In general, when evaluating the CALCRIM No. 1191 instruction, the court considers whether the jury's finding the prior acts true under a preponderance of the evidence test lowered the prosecution's burden of proof.

An error in jury instruction can form the basis for federal habeas corpus relief if it is shown that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Moreover, the allegedly erroneous jury instruction cannot be judged in isolation.

---

[5]The CALCRIM No. 1191 instruction given in this case went as follows:

The People presented evidence that the defendant committed the crime of lewd acts on a child that was not charged in this case. These crimes are defined for you in these instructions. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offenses. Proof by a preponderance of the evidence is a different standard of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

If the People have not met this burden of proof, you must disregard this evidence entirely.

If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and, based on that decision, also conclude that the defendant was likely to commit sodomy of a child under 10, oral copulation of a child under 10, sexual penetration of a child under 10, and lewd acts on a child, as charged here.

If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of sodomy of a child under 10, oral copulation of a child under 10, sexual penetration of a child under 10, and lewd acts on a child. The People must still prove each charge beyond a reasonable doubt. Lodgment 1 at 143; Lodgement 2 at 843-844.

1  *Estelle,* 502 U.S. at 72.  Rather, it must be considered in the context of the entire trial record and the

2  instructions as a whole.  *Id.*

3  　　　"The Due Process Clause protects the accused against conviction except upon proof beyond a

4  reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re*

5  *Winship*, 397 U.S. 358, 364 (1970).  A jury instruction that relieves the prosecution of its burden of

6  proving every element of an offense beyond a reasonable doubt violates due process.  *Henderson v.*

7  *Kibbe*, 431 U.S. 145, 153 (1977).

8  　　　The appellate court summarily rejected Petitioner's due process claim based on the No. 1191

9  jury instruction:

10  　　　Likewise, Miramontes acknowledges that his substantive challenge to CALCRIM No.
11  　　　1191, regarding propensity evidence, has been rejected by our Supreme Court in
     　　　*Reliford, supra,* 29 Cal.4th 1007, 1012–1016, 130 Cal.Rptr.2d 254, 62 P.3d 601. (*See*
     　　　*also People v. Cromp* (2007) 153 Cal.App.4th 476, 480, 62 Cal.Rptr.3d 848 [*Cromp*
12  　　　clarifies that CALCRIM 1191 is the same instruction addressed in *Reliford*].) This
     　　　argument is raised here only to preserve it for any future review by the federal courts.
13  　　　While we understand the purpose of raising these issues, we must follow the directions of
     　　　our Supreme Court and reject Miramontes's due process contentions. (*Auto Equity Sales,*
14  　　　*Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)

15  *People v. Miramontes*, 189 Cal. App. 4th at 1103-04.

16  　　　Here, the jury was adequately instructed regarding the prosecution's burden of proving

17  Petitioner's guilt beyond a reasonable doubt.  The challenged instruction says that the uncharged prior

18  conduct need only be proven by a preponderance of the evidence in order to be used by the jury.  But it

19  concludes with language stating that if the jury concludes that Petitioner committed the prior uncharged

20  acts, they are "only one factor to be considered along with all the other evidence," that they are "not

21  sufficient by [themselves] to prove that the defendant is guilty of sodomy of a child under 10, oral

22  copulation of a child under 10, sexual penetration of a child under 10, and lewd acts on a child, and that

23  the prosecution "must still prove each element of every charge beyond a reasonable doubt."  Lodgment

24  1 at 143; Lodgment 2 at 843-844.

25  　　　In closing arguments, the prosecutor said the evidence of the "uncharged events in this case" can

26  be used "to decide whether or not Mr. Miramontes is that one that committed these offenses," and

27  whether those events were related to intent and common scheme and plan.  Lodgment 2 at 868-869;

28  Lodgment 6 at 22.  She then explained the difference between looking at the uncharged acts under a

1    preponderance of the evidence standard, while needing proof beyond a reasonable doubt to support a

2    guilty verdict for the charged offenses.  Lodgment 2 at 874.

3           Here, the jury was clearly instructed on the prosecution's burden of proof. Even to the

4    extent the first part of the challenged instruction could be read as suggesting otherwise, the last part

5    of the instruction clarifies that a finding by a preponderance of the evidence that Petitioner

6    committed the prior offense is not sufficient by itself to convict him of the charged offenses.  *See*

7    *Schultz v. Tilton*, 659 F.3d 941, 944 (9th Cir. 2011) (finding the predecessor instruction to CALCRIM

8    No. 1191 was unambiguous and clearly stated that petitioner could be convicted only if the evidence as

9    a whole proved him guilty beyond a reasonable doubt of the charged crime).  The state court's

10   determination that the jury was properly instructed on the burden of proof, and that no reasonable juror

11   would have believed they could convict Petitioner of the charged offenses by a burden of proof less than

12   proof beyond a reasonable doubt, is objectively reasonable.

13          Accordingly, the court finds that the state court's adjudication of Claim 2 was neither contrary

14   to, nor involved an unreasonable application of, clearly established federal law, and was not based on an

15   unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

16                                        CONCLUSION

17          Petitioner has failed to show the state court determinations were contrary to or an unreasonable

18   application of clearly established federal law, or that they were based on an unreasonable determination

19   of facts.  Therefore the Court **RECOMMENDS** the Petition be **DENIED** in its entirety and that it be

20   **DISMISSED with prejudice**.  The court submits this report and recommendation to the United States

21   District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

22          **IT IS ORDERED** that no later than **April 26, 2013**, any party to this action may file written

23   objections with the Court and serve a copy on all parties.  The document should be captioned

24   "Objections to Report and Recommendation."

25   / / /

26   / / /

27   / / /

28   / / /

1     **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and

2   served on all parties no later than **May 10, 2013**.  The parties are advised that failure to file objections

3   within the specified time may waive the right to raise those objections on appeal of the Court's order.

4   *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

5   DATED:  March 28, 2013

6

7                                                      Hon. Nita L. Stormes
                                                       U.S. Magistrate Judge
8                                                      United States District Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28